# In The United States District Court
## For The Eastern District of Texas
### (Marshall Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 2:13-CR-04 |
| VS. | § | Chief Judge Gilstrap |
| | § | |
| MARKUS EARL DOTREY | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Markus Earl Dotrey's ("Dotrey") Motion Seeking Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Dkt. #47 and Dkt. #49). The Court, having considered the motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## I. BACKGROUND

On August 16, 2013, Dotrey entered a guilty plea for the offense of Use, Carrying, and Possession of a Firearm During and in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). On January 6, 2014, the undersigned sentenced Dotrey to 300 months' imprisonment to be followed by a term of five years of supervised release, (Dkt. #34) (amended judgment).

Dotrey pleaded guilty to the following facts: On January 10, 2013, a trooper with the Texas Department of Public Safety stopped a vehicle on State Highway 322 for speeding. When the trooper made contact with the driver—identified as Dotrey—the trooper smelled marijuana. Dotrey was then asked to get out of the car and informed the trooper that he had 1 1/2 pounds of marijuana in the front seat of the car. Dotrey further told the trooper that he had a handgun in the waist of his pants; the trooper seized a Llama, model Max-I, .45 caliber handgun from Dotrey's

waistband, and seized approximately 1 1/2 pounds of marijuana from a blue bag in the passenger's seat. The firearm was a stolen firearm stemming from Longview, Texas.

The docket reflects that Dotrey did not file a direct appeal. Instead, he filed his first motion to reduce his sentence in September 2015, which was denied, (Dkt. #39). Defendant subsequently filed a motion to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255, which was also denied, (Dkt. #45). He then filed the present motion on April 26, 2021. The Court notes that Defendant is currently incarcerated at Federal Correctional Institute (FCI) Beaumont— Medium, with a projected-release date of August 7, 2034. *See* https://www.bop.gov/inmateloc/ (Register Number: 11259-078).

Dotrey now seeks compassionate release based on the COVID-19 pandemic and his medical history. Specifically, he highlights that he has been diagnosed with post-diabetes [sic], high blood pressure, and obesity, thereby rendering him more susceptible to COVID-19 and its effects. Dotrey further explains that FCI Beaumont has a population of about 1400 inmates—with the highest infection rate throughout all prisons within the Bureau of Prisons. He notes that infections inside prisons are five times higher than the overall United States population and that the union representing federal correctional officers "agrees that the BOP has done poorly in containing the pandemic and admits that their facilities are understaffed."

Moreover, Dotrey argues that the Inspector General within the Department of Justice has released reports concerning the BOP's dire handling of the pandemic. The reports demonstrate the following findings:

1.   The BOP contract prisons were unable to comply with recommended precautions due to  a lack of supplies and were not given appropriate guidance until much later than other facilities;
2.   Testing has been limited inside the BOP; but where mass testing has been implemented, there are substantial percentages of inmates testing positive;

     3.      BOP facilities were unprepared for the pandemic and lacked necessary supplies and medical staff.

According to these findings coupled with the press coverage, Dotrey insists, "the BOP's handling of the pandemic could not be clearer: they have not stopped the outbreak and are ill-equipped to handle it."

Finally, Dotrey maintains that his lengthy sentence of twenty-five years' imprisonment—for a non-violent offense—constitutes extraordinary and compelling reasons justifying his early release. He argues that his sentence would have been drastically reduced "if the 924(c) portion of the [First Step Act of 2018] was made retroactive." Dotrey explains that he is forty-seven years of age, mature, and is a "completely reformed individual" who has completed several rehabilitation and educational programs—and has been "rated" to be at low risk for recidivism. He highlights that he has a loving family and has been incarcerated for over eight years, and has only incurred minor infractions while imprisoned.

The Court notes that the Government opposes a sentence reduction. In a letter dated May 10, 2021, the Government explained that "Beaumont FCC has inoculated 330 staff members and 1,567 inmates with the COVID-19 vaccine" and that the number of active COVID-19 cases at the unit are zero inmates and five staff members.

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and

3

compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 instituted the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release. Rather, the law enabled a defendant to move for compassionate release directly in the district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A). Prior to this change, BOP retained sole gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). This resulted in underuse and mismanagement.[1] *Id.* Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination. Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2]  By the text of § 3582(c)(1)(A), any

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. v. Dep't. of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited May 24, 2021). And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13 percent died awaiting a final decision by the BOP director. *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. LAW. REV. 850, 868 (2009) (nothing that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentencing implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Since the passage of the First Step Act, however, the Sentencing Commission has not updated its guidelines on compassionate release. This has caused significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that the Sentencing Commission's policy statement, § 1B1.13, is no longer binding on a district court. *See United States v. Shkambi*, 2021 WL 1291609 *4 (5th Cir. 2021) (explaining that "[t]he district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue.").

Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP; however, for motions made directly by an inmate, district courts are free to consider any relevant facts in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235-36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in

the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release.").

Nevertheless, despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling" reasons exist. Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added). Furthermore, the Sentencing Commissions' policy statement and commentary remains persuasive. *See United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn. Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").

The policy statement—found in Application Note 1—provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C). Finally, the BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors the BOP considers grounds for compassionate release. *See* PS 5050.50 para. 3-6. These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[3] *Id*.

---

[3] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and

In accordance with this guidance, district courts throughout the country have identified additional situations in which "extraordinary and compelling reasons" exist. While rehabilitation alone is not an "extraordinary and compelling" reason justifying compassionate release, it can be a factor warranting a reduction when an inmate has an otherwise qualifying condition.[4] *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation). If an inmate demonstrates a long, comprehensive record of rehabilitation, the question becomes whether injustice would occur if the person remains incarcerated. *See Brooker*, 976 F.3d at 268 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).

Additionally, courts examine any changes in law and the sentencing guidelines when determining whether a sentence is extraordinary. Specifically, for example, courts grant compassionate release at a remarkable rate for inmates subject to the now-abolished § 924(c) sentencing-staking. *See, e.g.*, *McCoy*, 981 F.3d at 285 ("As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence of a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)."). Though Congress

---

sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 para. 7).

[4] Title 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community. Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

did not retroactively eliminate § 924(c) sentence-staking, courts consider whether the outdated policy warrants relief on a case-by-case basis.[5]

Even if extraordinary and compelling reasons exist, such reasons must outweigh the 18 U.S.C. § 3553(a) factors to warrant a sentence reduction.  *See* 18 U.S.C. 3582(c)(1)(A).  These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
>
> (5) any pertinent [Sentencing Commission] policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id*. § 3553(a).

---

[5] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo LAW. REV. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence-stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*").

### III. DISCUSSION

Dotrey moves for compassionate release based on his medical conditions, the BOP's handling of the COVID-19 pandemic at FCI Beaumont as well as across the country, and his "nonviolent" offense. The Government opposes the motion.

Although Dotrey has met the § 3582(c)(1)(A)'s exhaustion requirement, the Court finds that he has not satisfied the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of this sentence. Therefore, Dotrey's motion must be denied.

### A. Satisfaction of § 3582(c)(1)(A)'s Exhaustion Requirement

Dotrey's motion for compassionate release may only be considered if he first meets the statute's exhaustion requirement. Court's may not consider modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Exhaustion of administrative remedies in this context requires a denial by the warden of the defendant's prison facility or waiting thirty days without receiving a response to a request.[6] *Id*.

Crucially, the exhaustion requirement within § 3582(c)(1)(A) cannot be waived. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, 2020 WL 1816496 *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects of the COVID-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeve's failure

---

[6] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 2020 WL 1489829 *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by t he Residential Re-entry Manager suffices to exhaust his administrative rights").

to exhaust his administrative remedies or to waive the 30-day waiting period."). Consequently, if a defendant has not first sought relief from the BOP—or has not waited thirty days—the Court may not consider his motion.

Here, Dotrey explains that he has "correctly" exhausted his administrative remedies before filing the present motion. While difficult to decipher, Dotrey contends that he has filed a request for compassionate release with the warden at FCI-Beaumont but has not received a response. Dotrey does not provide the dates on which he filed his request with the warden; however, the Government notes that "[o]n April 29, 2021, Mr. Dotrey filed a motion for compassionate release in which he noted that he exhausted all COVID-19 administrative remedies by filing a compassionate release request with the warden without response." (Dkt. #48).

In its response to his most current motion, the Government states, "However, neither BOP nor FCI Beaumont Medium have any record of Defendant ever submitting a request for release from the warden."   *See* Attachment 3 to the Government's Response to Defendant's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. #50).

The Court finds that Dotrey has not properly exhausted his administrative remedies. Alternatively, even if Dotrey had exhausted his remedies he has failed to establish extraordinary and compelling reasons for his compassionate release, as the Court addresses below.

## B. Dotrey Failed to Establish Extraordinary and Compelling Reasons Justifying Compassionate Release

Alternatively, the Court takes up whether Dotrey has satisfied the "extraordinary and compelling reasons" requirement. Ultimately, the Court concludes he has not. As noted, Dotrey seeks compassionate release based on (1) the COVID-19 pandemic while imprisoned, (2) his medical conditions that render him more susceptible to COVID-19 infection, (3) the changes to 18 U.S.C. § 924(c), and (4) his lengthy sentenced coupled with his age, rehabilitation, and "non-violent" nature.

10

### 1. COVID-19 Pandemic and the BOP

Dotrey first maintains that inside the BOP, generally, there have been 14,000 infections among inmates and 1,700 infections among staff members. Over 100 inmates have died, as well as numerous staff members. He states that—presently at FCI Beaumont-Medium—nearly one-third of the inmate population has tested positive for COVID-19, and the unit "has been determined to have the highest infection rate in the BOP." Dotrey contends that the BOP has been wildly criticized over the past ten months for failing to contain the pandemic and cites a Department of Justice Inspector General (DOJ OIG) report.   Ultimately, Dotrey argues that the "internal inspections done by the DOJ OIG in conjunction with the press coverage of the BOP's handling of the pandemic could not be clearer: they have not stopped the outbreak, and are ill-equipped to handle it."

However, an inmate cannot satisfy the "extraordinary and compelling reasons" requirement by simply citing to COVID-19 statistics or through sweeping allegations about a prison's ability or inability to contain the outbreak.  *See United States v. Koons*, 455 F.Supp.3d 285, 290-91 (W.D. La. 2020). In other words, the mere spread of COVID-19 inside prisons and jails—standing alone—is neither an extraordinary nor compelling reason to justify compassionate release. *Id*. at 291 ("The Court stresses the point that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not grounds to justify a finding of extraordinary and compelling circumstances.").

The rampant spread of COVID-19 within correctional institutions—and the conditions of confinement that result from that spread—are applicable to *all* inmates who are currently imprisoned and, thus, are not unique to any one inmate. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may

spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). If the "extraordinary and compelling reasons" requirement in this context hinged solely on the mere spread of COVID-19 within correctional institutions, then federal courts would be obliged to release every inmate. *See Koons*, 455 F.Supp.3d at 291 ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obliged to release every prisoner.").

Here, Dotrey highlights statistics concerning how many inmates within the BOP have contracted COVID-19 and how many inmates have unfortunately died as a result of the virus. He further contends that press reports have identified the BOP's failure to "stop" or contain the virus. Such claims are general allegations rather than individualized allegations that relate specifically to Dotrey. Therefore, to the extent that Dotrey raises general allegations concerning the conditions of confinement at FCI Beaumont-Medium as grounds for relief, his request for compassionate release lacks merit. *See United States v. Vasquez*, 2020 WL 3000709 *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

## 2. Dotrey's Medical Conditions

Dotrey argues that "extraordinary and compelling reasons" exist in his case because he is forty-seven years old and suffers from post-diabetes [sic], high blood pressure, and obesity. The Court notes, first, that Dotrey failed to attach any documentation or exhibits demonstrating that he suffers from these conditions; the Court may deny his motion for that reason alone. *See, e.g.*, *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021) ("Initially, we note that Elias did not

provide any records in her motion to support that she has hypertension. The district court could have denied Elias's motion for compassionate release on this basis.").

Even if Dotrey provided records supporting his conditions, the Court finds that his medical conditions are not severe enough to constitute "extraordinary and compelling." *See Shkambi*, 2021 WL 1291609 at *4 (explaining that the district court has discretion to decide whether moving inmate's conditions present extraordinary and compelling reasons justifying a reduction in sentence). Dotrey's conditions—diabetes or post-diabetes [sic], high blood pressure (hypertension), and obesity—are not terminal illnesses and Dotrey has not alleged or shown that his conditions substantially diminish his ability to provide self-care.

Indeed, as Dotrey highlights, the Center for Disease Control (CDC) has identified that those individuals who suffer from diabetes, hypertension, or obesity have a higher risk for severe symptoms should they contract COVID-19. *See United States v. Mondragon*, 2021 WL 951787 *4 (E.D. Tex. Mar. 2021) (explaining that the CDC has found that comorbidities such as obesity, hypertension, and diabetes result in a higher risk of severe COVID-19 symptoms). Nevertheless, despite this increased risk, these comorbidities are not "extraordinary"—as the sheer prevalence of these conditions both inside and outside of prison do not render them unordinary. *Id.* ("According to the CDC, 42.5% of the adult population is obese, 73.6% is overweight, and nearly half has hypertension. In addition, the CDC reports that 34.2 million people, approximately 10.5% of the population, have diabetes.").

The Fifth Circuit has specifically found, in affirming the denial of an inmate's motion for compassionate release, that neither hypertension nor high cholesterol conditions constitute "extraordinary" reasons for purposes of compassionate release. *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("In fact, nearly half of the adult population in the United States

suffers from hypertension. And roughly 12% of Americans suffer from high cholesterol. Thus, we cannot say either of those conditions makes Thompson's case 'extraordinary.' Unfortunately, both are commonplace."). Consequently, while the Court recognizes that hypertension increases a person's risk for serious symptoms of COVID-19, Dotrey's hypertension diagnosis cannot be considered "extraordinary" to warrant compassionate release. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884 *2 (W.D.N.C. Sept. 2020) (finding that an inmate with hypertension, a condition that may increase severity of COVID-19, without more, does not present an extraordinary and compelling reasons justifying compassionate release).

Similarly, Dotrey's diabetes/post-diabetes [sic] and obesity conditions do not constitute "extraordinary" reasons such that compassionate release is warranted. Courts have found that both medical conditions—alone or in conjunction with other medical conditions—do not provide adequate grounds for compassionate release. *See, e.g.*, *United States v. Hamon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming the denial of compassionate release to a fifty-two-year-old woman with obesity and a body mass index of 36); *United States v. Williams*, 2021 WL 414825 *3 (M.D. La. Feb. 2021) (denying compassionate release to an inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care while imprisoned); *Mondragon*, 2021 WL 951797 at *3 (finding that hypertension, diabetes, and obesity do not meet the criteria for compassionate release).

Here, while Dotrey has explained that he suffers from obesity and post-diabetes [sic], without more, his conditions do not constitute extraordinary and compelling reasons for compassionate release. He does not allege that he cannot perform self-care while imprisoned because of his medical conditions; rather, he simply highlights how he has been diagnosed. As

14

previously explained, however, mere diagnosis without more and the general fear of contracting COVID are insufficient to justify compassionate release.

Also, it is notable that Dotrey has been vaccinated against COVID-19.  (Dkt. #50 at page 18).

### 3. Dotrey's 18 U.S.C. § 924(c) Conviction

Next, Dotrey maintains that his sentence of twenty-five years' imprisonment would have been drastically reduced if the 18 U.S.C. § 924(c) portion of the First Step Act was made retroactive. He explains that courts have granted compassionate release to defendants who had received stacked sentences under § 924(c) prior to the First Step Act of 2018.

Under the First Step Act of 2018, § 924(c)(1)(C) was amended to clarify that the consecutive mandatory minimum sentence of 25 years only applies when a defendant commits a subsequent § 924(c) violation after a prior § 924(c) conviction has become final. *See United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021). With the amendment, the mandatory minimum sentence of twenty-five years' imprisonment is triggered only by a repeat violation that occurs after a prior conviction under the same statute has become final.  *See United States v. Gomez*, 960 F.3d 173, 176-77 (5th Cir. 2020) ("In other words, the 25-year repeat offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses. Now, to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution.").

Here, however, neither *Cooper* nor *Gomez* are applicable. Dotrey was previously convicted—in this Court—in 2005 for one count of possession with the intent to distribute cocaine and one count for the use and possession of a firearm during a drug trafficking offense under 18 U.S.C.  924(c) in case number 2:05-CR-0003-9. Consequently, even if the First Step Act

amendments did apply retroactively, Dotrey would not have benefited because he was previously convicted of a § 924(c) offense in a prior, separate prosecution.

### 4. Dotrey's Sentence, Rehabilitation, and Non-Violence

Dotrey lastly contends that his "lengthy" sentence of twenty-five years constitutes "extraordinary and compelling" reasons justifying compassionate release. Moreover, he insists that his offense was non-violent, he has been rehabilitated, and he has been rated by the BOP as one with a low risk of recidivism. The Court finds that these claims are meritless.

With respect to his sentence, the Court first reminds that Dotrey was sentenced to twenty-five years imprisonment for one count of use, carrying, and possession of a firearm during and in furtherance of a drug trafficking crime. The facts of his offense demonstrate that he was driving a vehicle with both 1 1/2 pounds of marijuana and a handgun on his waistband. Even if this Court were to agree with Dotrey that trafficking such a large amount of marijuana while possessing a handgun is "nonviolent," it would be of no consequence to this Court's determination. Although a defendant may not have been convicted of a violent crime, "that does not make his offense any less dangerous to the community." *United States v. Thompson*, 2021 WL 1721014 at *3 (E.D. La. Apr. 2021) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1984) ("The harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger.'")).

An examination of Dotrey's Presentence Investigative Report (PSR), shows that he has a criminal history demonstrating a danger to the community thereby precluding a granting of compassionate release. Specifically, the report shows that Dotrey's criminal background include multiple assaults, evading arrest, and several drug offenses, (Dkt. # 29) (sealed). Dotrey committed the underlying offense while on supervised release—suggesting that he is, indeed, at risk for recidivism and remains a danger to the community. *Id*. at *4 ("Although he was not convicted of

a violent crime, Thomas's criminal history reflects a pattern of dangerous behavior that belittles his request for early release."); *see also United States v. Sabagh-Cajeli*, 2021 WL 1616894, *6 (E.D. Tex. Apr. 2021) ("In view of the nature and circumstances of his offense of conviction, including the large quantity of cocaine involved, the court cannot conclude that Sabagh-Cajeli's early release from prison would afford adequate deterrence or protect the public . . .").

By his own admission, Dotrey has served over eight years of his sentence of twenty-five years' imprisonment.  The Fifth Circuit has recognized that the "courts that granted compassionate release [on the basis of pre-existing medical conditions] largely have done so for defendants who had already served the *lion's share* of the sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434-35 (emphasis added); *see also United States v. Muniz*, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting compassionate release for COVID-19 for a defendant who had served 80% of his reduced sentence and suffered from end-stage renal disease, diabetes, and hypertension).

Here, Dotrey's has served over eight years of his total sentence of twenty-five years' imprisonment—which is approximately 33% of his sentence. Dotrey has not served half or the "lion's share" of his sentence. Consequently, the Court finds that serving eight years is not a just punishment for an offense that carries a punishment of twenty-five years imprisonment. *See United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of a compassionate release motion and explaining that "[i]nstead, the court concluded that 'releasing [Chambliss] after serving only 14 years of a 30-year sentence minimizes both the impact of [Chambliss'] crime and seriousness of the offense.'").  The Court is not persuaded that Dotrey's age and offense constitute "extraordinary and compelling reasons" justifying compassionate release.

## III. CONCLUSION

Dotrey has failed to exhaust his administrative remedies as required by statute. He also has failed to meet the "extraordinary and compelling reasons" requirement under 18 U.S.C. § 3582(c)(1)(A) warranting compassionate release. *See United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release"). General fear of contracting COVID-19 and the mere spread of COVID-19 within prison settings are not sufficient grounds warranting compassionate release. Moreover, Dotrey's underlying medical conditions, while unfortunate, are not severe enough to constitute "extraordinary and compelling" reasons justifying compassionate release—and, finally, he has not served the "lion's share" of his sentence. Given Dotrey's failure to satisfy § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions—but a defendant must conform both the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify sentence. Because Dotrey has failed to meet the controlling requirements for compassionate release under § 3582(c)(1)(A), his motion must be denied. Therefore, it is

**ORDERED** that Defendant Markus Earl Dotrey's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for Extraordinary and Compelling Reasons, (Dkt. #47 and Dkt. #49), are **DENIED**.

18

**So ORDERED and SIGNED this 15th day of September, 2021.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE